306 So.2d 99 (1974)
In re ESTATE OF Mary H. BEAKES, Deceased.
Peter HOUSTON, Petitioner,
v.
Richard G. TAYLOR, as Executor of the Estate, Respondent.
No. 45446.
Supreme Court of Florida.
November 20, 1974.
Rehearing Denied February 3, 1975.
*100 Dorsey F. Henderson, Jr., of Weissenborn, Burr & Hyman, Miami, for petitioner.
Carl H. Hoffman, for respondent.
DEKLE, Justice.
Certiorari was granted in this cause to review the decision of the District Court of Appeal, Third District, at Fla.App., 291 So.2d 29 (1974), on the basis of direct conflict with In re Estate of Tomlinson, 186 So.2d 89 (Fla.App. 1st 1966). We have jurisdiction pursuant to Art. V, § 3(b)(3), Fla. Const.
Petitioner, decedent's grandson, sought revocation of probate, alleging undue influence, lack of testamentary capacity and failure to comply with statutory requirements of will execution, Fla. Stat. § 731.07. The trial judge held that undue influence and lack of testamentary capacity were not established; however, upon a finding that the technical requirements for valid will execution were not met, he ordered revocation of probate.
On appeal the Third District Court affirmed the finding of no undue influence but reversed the finding of insufficiency of will execution on authority of In re Estate of Wognum, 279 So.2d 66 (Fla.App. 4th 1973), an opinion that was unavailable at the time the trial judge ordered revocation.
The facts surrounding the execution as found by the trial judge, and recited in the Third District Court opinion, are as follows:
"Testatrix summoned her attorney, Richard G. Taylor, to come to her nursing home quarters for the purpose of getting instructions to prepare a new Will. This conference occurred on or about August 21, 1972, within a week of the death of her son whom she had depended on in later years for management of her affairs. Attorney Taylor prepared the Will in accordance with instructions given him by the testatrix and returned the next day, August 22, 1972, for the purpose of executing the Will. He discussed the Will with testatrix and, then, the two attesting witnesses, Delores Moss, a nurse in the home, and Arthur Tarren, Assistant Administrator of the establishment, were called in to witness the execution of the instrument. Because of physical infirmity to her hands it was extremely difficult for testatrix to physically sign her name and, therefore, both witnesses observed attorney Taylor actually sign `Mary H. Beakes' in the appropriate place on the Will after getting a nodding assent from testatrix. The two witnesses proceeded to sign their names as witnesses. Neither witness was told that this instrument was the Last Will and Testament of the deceased and neither took the time or trouble to read the attestation clause or inquire as to the nature of the instrument. Nurse Moss thought the paper was giving Loretta (Graves) [beneficiary] the right to handle Mary's (testatrix) financial affairs.
"Witness Tarren thought it was a `power of attorney'. There was no attempt to prevent the witnesses from determining what the instrument was. Tarren admitted he was careless in not apprising himself of what he was witnessing and though he signed the customary oath of witness to Will at the courthouse on October 12, 1972, after the *101 death of testatrix, he still was not cognizant that the instrument he witnesse[d] was a Will."
The sole issue before this Court is whether under Florida law it is necessary for proper execution of a will that attesting witnesses know that the instrument which they witness is a will.
It is petitioner's contention that F.S. §§ 731.07 and 731.03(16) implicitly require the subscribing witness to have knowledge of the testamentary character of the paper signed by the testator. In support of such contention petitioner relies on Tomlinson, supra, wherein the Court cited 94 C.J.S. Wills § 187, p. 1011, for the proposition that the subscribing witness must have knowledge of the testamentary character of the papers signed by the testator. This is a proper interpretation of the law in jurisdictions where the statutes require publication. Ironically, in the same volume and section of C.J.S. and on the page preceding that cited in the Tomlinson case it is stated:
"It is a rule of general application that, in the absence of a statute requiring it, it is not necessary that the testator should publish his will, or that the witnesses should know at the time they attested the will that the instrument was a will. Moreover, it has very generally been held that publication of a will, or knowledge on the part of the witnesses that the instrument is a will, is not made necessary by statutes providing that wills shall be attested and subscribed by witnesses or requiring that the signatures shall be made or the will acknowledged in the presence of witnesses." 94 C.J.S. Wills § 187, p. 1010.
The question presented then is essentially one of whether Florida requires publication of the will. Publication of a will consists of the communication by the testator to the attesting witnesses at the time they attest the instrument of his intention that it should take effect as his will. The formal requirements for execution and attestation of wills are set forth in F.S. § 731.07. This statute is written in the alternative to provide for those occasions where some other person signed the testator's will for him as well as the usual situation where the testator signs the will himself. The statute includes no requirement for publication, that is, that the testator declare to the witnesses that the instrument is his will.
Petitioner cities In re Watkins, 75 So.2d 194 (Fla. 1954), in support of the contention that no distinction can be drawn between an attesting witness and a subscribing witness and that more is required than for witnesses merely to subscribe or sign their names. In Watkins this Court reasoned that although there is authority supporting the distinction, the distinction in most instances relates to the issue of whether a subscribing witness in a particular situation was in fact an attesting witness, the latter requirement encompassing more than the mere act of subscription. In the case of In re Estate of Wognum, supra, cert. den., Fla., 284 So.2d 216, the District Court of Appeal, Fourth District, specifically held that F.S. §§ 731.07 and 731.03(16) do not require the attesting witnesses to do more than actually witness the testator's signature and then sign the will as a witness. Furthermore, in analyzing these statutory provisions the Fourth District specifically dealt with petitioner's argument in regard to In re Estate of Watkins, supra. After noting that § 731.07 is modified by F.S. § 731.03(16) (defining both as the same) which was added to the probate code after publication of Watkins, that court stated:
"In our view, § 731.03(16) which was enacted by the legislature as Chapter 29925, Laws 1955, was intended to eliminate any question which might have been engendered by the above-quoted language from In re Watkins Estate and permits no other conclusion than that an `attesting' witness, for purposes of § 731.07 may be one who simply witnesses *102 the signing of the will by the testator and thereafter subscribes the will as evidence of the fact that he witnessed the testator's signature. While it may be good form in some instances for a witness to explore with the testator the latter's testamentary capacity, the nature of the document, and its voluntary character, such in our opinion is not essential to qualify one as an attesting witness under § 731.07." (279 So.2d 69)
Clearly, F.S. § 731.07 does not require publication; therefore, in accordance with the general princples enunciated above, as well as the Fourth District Court's holding in In re Estate of Wognum, supra, we hold there is no requirement in Florida that the attesting witnesses know at the time they attested (subscribed) the will that the instrument was a will. That part of the decision in Tomlinson, supra, to the contrary is expressly overruled.
The writ is accordingly discharged and the petition is
Dismissed.
It is so ordered.
ADKINS, C.J., and ERVIN, McCAIN and OVERTON, JJ., concur.